UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHEYENNE PRODUCTIONS, S.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV00166 AGF |
| ) | |
| CHARLES E. BERRY, a/k/a/ CHUCK ) | |
| BERRY; WILLIAM MORRIS ) | |
| ENDEAVOR ENTERTAINMENT, LLC, ) | |
| f/k/a WILLIAM MORRIS AGENCY; and ) | |
| RICHARD ALEN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the joint motion (Doc. #68) of Defendants William Morris Endeavor Entertainment, LLC, ("WMEE") and its agent Richard Alen to dismiss the counts in Plaintiff Cheyenne Productions, S.A.'s ("Cheyenne") second amended complaint that are against them, on the ground that the Court lacks personal jurisdiction over them. For the reasons set forth this motion shall be granted.

## BACKGROUND

**Relevant Facts**

Cheyenne is a Panama company with its principal place of business in Nevada. WMEE is a Delaware company with its principal place of business in California. Alen is a resident of California. Defendant Chuck Berry, a musical performing artist, is a resident of Missouri. Cheyenne alleges that it was Berry's European booking agent since 2003, and that in July 2008, it, as "purchaser," entered into an agreement with Berry pursuant to which Berry agreed to perform in 12 shows at various venues in Europe, in

exchange for $30,000 per show.  Cheyenne alleges that it pre-paid Berry the full $360,000 for the July 2008 European Tour, but that Berry then unilaterally cancelled three of the 12 performances, including the first one, and refused to reimburse Cheyenne the $30,000 for each of these shows that it had advanced him.  Cheyenne alleges that after Berry cancelled the first performance, he demanded more money for the remaining shows of this tour, which Cheyenne felt coerced to pay.

Cheyenne further alleges that it subsequently negotiated and scheduled another tour for Berry in November 2008 with various concert promoters, but was not compensated by Berry for its services in arranging this tour.  Cheyenne alleges that Berry caused Cheyenne to incur certain other expenses and damaged its business relations with various promoters, as a result of his wrongful conduct.

Cheyenne alleges that part of Berry's wrongful conduct was motivated by WMEE through Alen (referred to henceforth collectively as WMEE).  WMEE is a talent agency that represents performing artists, including Berry, in connection with personal appearances, such as concerts.  WMEE has four offices -- California, New York, Tennessee, and England -- and it books engagements for its clients throughout the world out of these offices.  WMEE does not enter into performance contracts on behalf of its clients.  Rather, WMEE's clients enter into contracts with promoters, under which the clients are paid for their performances.  WMEE's clients then pay WMEE commissions, typically in an amount equal to ten percent of the compensation the clients receive from the promoters.

Cheyenne alleges that WMEE had arranged (in January 2008) for a July 4, 2008 performance by Berry in Hawaii that conflicted with his opening show on the July 2008 European Tour, without informing Cheyenne of this, and that this is why Berry missed the opening show in Europe.  Cheyenne alleges that WMEE fraudulently told Cheyenne that Berry could not be in Europe until mid-July due to doctor's orders.

Cheyenne further alleges that WMEE motivated Berry to demand more money for the other shows on the July 2008 European tour.  It is undisputed that WMEE sent the contract that it had arranged between Berry and a promoter other than Cheyenne for the Hawaii concert, from California to Berry in Missouri and that Berry signed it in Missouri.  It is also undisputed that in June 2008, Berry and WMEE began discussing making their agency relationship exclusive, that such a relationship was agreed upon in late summer 2008, and that Berry signed this agency agreement in Missouri.  These discussions took place via faxes and phone calls initiated by WMEE to Berry, who was in Missouri.  Cheyenne alleges that WMEE thereby motivated Berry to end his relationship with Cheyenne, and to exclude Cheyenne from acting as his booking agent for the November 2008 tour.

The first seven counts of the second amended complaint are against Berry under various theories of recovery, including breach of contract, unjust enrichment, fraud, and interference with business relations between Cheyenne and various promoters.  Counts VIII, IX, and X are against WMEE and Alen: Count VIII is for fraud; Count IX is for negligent misrepresentation, and Count X is for tortious interference with contractual or

3

business relations between Cheyenne and Berry and Cheyenne and various promoters. Count XI is against just WMEE for negligent hiring and retention of Alen.

WMEE does not have offices or employees in Missouri. Alen never lived or worked in Missouri. Neither WMEE nor Alen maintains bank accounts, owns land, or pays taxes in Missouri. Jurisdictional discovery allowed Cheyenne to discover the number of Missouri shows booked by WMEE (the "Missouri shows") from 2000 through 2010, and the annual commission totals WMEE received from these shows. These numbers have been submitted to the Court under seal, pursuant to an agreed-upon protective order entered by the Court at the parties' request.

**Arguments of the Parties**

WMEE argues that this Court lacks general personal jurisdiction over it because WMEE had no systematic or continuous contacts with Missouri. WMEE maintains that the Missouri Shows and commissions it received from them does not establish such contacts between WMEE and Missouri because the performance contracts for the shows were entered into directly between WMEE's clients and a promoter, and WMEE was not a party to such contracts. Moreover, the commissions WMEE received from those shows were paid by the clients -- of whom only Berry has been recognized as a Missouri resident -- and not by the promoters putting on the Missouri shows.

WMEE also argues that the Court lacks specific personal jurisdiction over it because the tortious acts that Cheyenne asserts it committed did not arise out of WMEE's agency agreement with Berry, which "does not require Berry to be anywhere at any time, nor does it prevent him from working with promoters or buyers, such as Cheyenne."

4

WMEE points out that the alleged tortious acts, such as not informing Cheyenne of the Hawaii engagement and telling Cheyenne that Berry could not go to Europe until mid-July due to doctor's orders, were not committed in Missouri.

WMEE asserts that Cheyenne has failed to allege facts sufficient to support its claims against WMEE on the merits, and therefore the Court cannot assert personal jurisdiction over WMEE. WMEE relies on the proposition that because it was acting as Berry's agent in Berry's interest, it cannot be liable for interference with Cheyenne's contractual relations. WMEE also asserts that Cheyenne cannot prevail on its tortious interference claim because when WMEE booked the Hawaii concert in January 2008, it could not have anticipated Cheyenne's contract with Berry in July 2008.

Cheyenne argues that the number of Missouri shows which WMEE booked on behalf of its clients from 2000 through 2010 and the commissions WMEE earned from serving as agent for these shows evidences WMEE's systematic and continuous contacts with Missouri, subjecting WMEE to the general personal jurisdiction of this Court.[1] Cheyenne also points to the fact that WMEE's website solicits viewers to book artists represented by WMEE and directs those interested in booking performances in Missouri to contact a certain individual.

Cheyenne further argues that this lawsuit arises out of WMEE's contact with Missouri, such that specific personal jurisdiction exists over WMEE. Cheyenne focuses

---

[1] As WMEE points out, this evidence does not involve Alen and, therefore, the question as to general jurisdiction relates only to WMEE. Indeed, Cheyenne limits its general jurisdiction argument to WMEE.

its specific personal jurisdiction argument on its claim against WMEE for tortious interference in Cheyenne's business expectancies with Berry and various promoters. Cheyenne argues that such personal jurisdiction results from WMEE's communications with Berry in Missouri motivating him to sever his relationship with Cheyenne by making WMEE his exclusive agent, to demand additional compensation for most of the July 2008 European shows, and to cancel shows. Cheyenne points to letters and faxes that WMEE sent to Berry in Missouri; the fact that WMEE's contact information is listed on Berry's "Missouri-based website" pursuant to WMEE's request; and Berry's deposition in which he states that WMEE communicated with him mainly by calling him in Missouri on the phone.

## **DISCUSSION**

To defeat a motion to dismiss for lack of personal jurisdiction, "the nonmoving party needs only make a prima facie showing of jurisdiction." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *Dakota Indus., Inc. v. Dakota Sportswear Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). The plaintiff has the burden of proving facts supporting such jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*, 646 F.3d 589, 592 (8th Cir. 2011). "Where, as here, 'the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" *Pangaea, Inc. v. Flying Burrito, LLC*, ___F.3d ___, 2011 WL 3241859, at *1 (8th Cir. Aug. 1, 2011) (quoting another source).

In a diversity action, a federal court may assume jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause. Here, the Court concludes that asserting personal jurisdiction over WMEE does not comport with due process. For the assertion of personal jurisdiction over a nonresident defendant, due process requires sufficient contacts between the nonresident defendant and the forum state "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *J. McIntyre Mach. Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *Id.* "As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

There are two types of personal jurisdiction -- general and specific. "A court may assert general jurisdiction over . . . sister-state . . . corporations to hear any and all claims against them when their affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 131 S. Ct. 2846, 2851 ( 2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). By contrast, a court may exercise specific jurisdiction over a nonresident defendant when the defendant has purposely directed its

activities at the forum state, and the litigation results from injuries arising out of, or relating to, those activities. *Id.*; *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010).

The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum are sufficient to satisfy due process, affording the first three factors primary importance: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties, with the third factor applying only in the specific jurisdiction context. *Steinbuch v. Cutler,* 518 F.3d 580, 586 (8th Cir. 2008).

When the cause of action involves a tortious act, a plaintiff also can obtain specific jurisdiction over a nonresident defendant by employing the *Calder* effects test. *Johnson*, 614 F.3d at 796. This test "provides that a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered -- and which the defendant knew was likely to be suffered -- [in the forum state]." *Johnson*, 614 F.3d at 796 (quoting *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004).

Here the Court first concludes that it does not have general personal jurisdiction over WMEE by virtue of the Missouri shows and/or the commissions WMEE received from its clients as a result of those shows. WMEE's involvement is limited to representing its clients – of whom only Berry has been identified as a Missouri resident – from its offices outside of Missouri. If the representation results in an offer being

8

accepted by a WMEE client, the resulting performance contract is entered into directly between the client and the promoter – WMEE is not a party to such performance contracts. From that point forward, it is the promoter – not WMEE – that has contacts with Missouri. The promoter – not WMEE – contracts with the venue, advertises and produces the show, and sells tickets to Missouri residents. Under these undisputed facts, WMEE cannot be said to have continuous and systematic contacts with Missouri.

With regard to specific personal jurisdiction over WMEE, none of the facts underlying Cheyenne's claims of fraud (Count VIII) and negligent misrepresentation (Count IX) occurred in Missouri, nor did Plaintiff, a non-Missouri resident, sustain the injuries alleged as a result of these torts in Missouri. Thus, the Court concludes that it does not have personal jurisdiction over WMEE with respect to Counts VIII and IX of the amended complaint.

The Court reaches the same conclusion with regard to Cheyenne's tortious interference claim. Most significantly, as with the other state law tort claims against WMEE, the alleged injuries were not sustained in Missouri. In both cases that Cheyenne argues are controlling here, the plaintiff was a Missouri resident and thus the injuries from the alleged tortious acts were sustained in Missouri, a factor upon which the courts relied in finding specific personal jurisdiction. *See Instituform Techs., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1066-67 (E.D. Mo. 2005), and *Peabody Holding Co. v. Costain Group, PLC,* 808 F. Supp. 1425, 1439 (E.D. Mo. 1992). The Court does not believe that WMEE's communications with Berry in Missouri related to the tortious interference claim, which WMEE could have foreseen would cause injury to Cheyenne in

Panama or Nevada, were such that WMEE would have reasonably anticipated being haled into court in Missouri as a result of those contacts.

The fourth factor in assessing personal jurisdiction – the interest of the forum state in providing a forum for its residents – is of secondary importance and does not add any weight to Cheyenne's position. The fifth factor – convenience of the parties – also a secondary factor, seems to be a "draw," although the Court recognizes that Missouri is a convenient forum for Cheyenne because Berry is properly sued here. In sum, the Court finds Cheyenne's arguments in favor of personal jurisdiction over WMEE unpersuasive.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Defendants William Morris Endeavor Entertainment, LLC, and Richard Alen to dismiss the counts in Plaintiff's second amended complaint as to them for lack of personal jurisdiction is **GRANTED**. [Doc. #68]

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 9th day of September, 2011.