UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHEYENNE PRODUCTIONS, S.A., | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV00166 AGF |
| | ) | |
| CHARLES E. BERRY, a/k/a/ CHUCK BERRY, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 115) of Defendant Charles E. Berry for summary judgment on the seven remaining counts of Plaintiff Cheyenne Production, S.A.'s ("Cheyenne") second amended complaint. For the reasons set forth below, this motion shall be denied, except with respect to one issue on which the Court will reserve ruling.

## BACKGROUND

Berry is a musical performing artist. Cheyenne was Berry's European booking agent since 2002 or 2003. On June 27, 2008, Cheyenne sent Berry an "Updated Draft of Contract (12 Shows)" which provided that Berry would perform 12 shows at various venues in Europe during July 2008, in exchange for $30,000 per show, with the first show scheduled in Toulouse, France, on July 6, 2008. (Doc. No. 56-1.) Cheyenne sent Berry a $300,000 deposit. Berry separately had booked a show in Hawaii for July 4, 2008, but confirmed that he could still perform the Toulouse show and told Cheyenne to

purchase a plane ticket for him from Hawaii to France. Cheyenne did so and wired the final payment of $60,000 but Berry skipped the flight, making it impossible for him to perform the Toulouse show. According to Cheyenne, Berry misrepresented to Cheyenne that this was because he had to attend his brother's funeral and due to doctors' orders.

On July 5, 2008, Cheyenne sent Berry an "Updated Draft of Contract (11 Shows)" for the 11 remaining performances, with a slightly revised itinerary. Cheyenne also sent Berry an additional $3,000, which according to Cheyenne, Berry demanded, threatening not to continue with the tour. The July 5, 2008 document noted that Berry had been overpaid $30,000 for the first show, and could keep that amount on credit for Berry's November 2008 Tour. Berry did not sign either "Updated Draft of Contract." He performed only nine of the remaining 11 performances, cancelling the last two shows, and did not pay back any monies to Cheyenne.

Cheyenne further alleges that it negotiated and scheduled a November 2008 tour for Berry with various concert promoters, but was not compensated by Berry for its services (of six months) in arranging this tour; rather, Berry, using a different agent, eventually performed 11 of the 15 shows Cheyenne had organized.

Cheyenne alleges that as a result of his conduct, Berry caused Cheyenne to incur certain other expenses, such as increased travel expenses, and damaged its business relations with various promoters. In Counts I and II of the second amended complaint Cheyenne asserts claims for breach of contract with respect to Berry's cancellation of the first show of the July 2008 Tour (Count I) and with respect to his cancellation of the last two shows of this tour (Count II). As damages, Cheyenne seeks the money advanced to

Berry for shows he never performed, and additional expenses Cheyenne allegedly incurred as a result of this non performance.

Count III is for unjust enrichment and seeks reimbursement from Berry for the money Cheyenne paid him for the three shows he missed on the July 2008 Tour and for the value of services rendered by Cheyenne in arranging the November 2008 Tour. Counts IV and V, are for fraud and negligent misrepresentation, respectively, based on Berry's representations to Cheyenne that he intended to perform all the shows of the July 2008 Tour. In these counts, Cheyenne seeks the same damages sought in Counts I and II, as well as punitive damages.

In Count VI, Cheyenne alleges that by cancelling the three shows on the July 2008 Tour and excluding Cheyenne as an agent for the November 2008 Tour, Berry tortiously interfered with Cheyenne's business relations with various promoters, resulting in damages to Cheyenne. And Count VII is a claim for conversion, seeking the return of the money Cheyenne paid to Berry for the three shows of the July 2008 Tour that Berry did not perform.[1]

Berry filed a single-count counterclaim for breach of contract, alleging that in connection with the July 2008 Tour, Cheyenne agreed to pay all of Berry's taxes, which amounted to $156,559, but failed to do so.

In support of his motion for summary judgment on Counts I and II, Berry acknowledges that there was an agreement between him and Cheyenne for the July 2008

---

[1] The remaining counts of the second amended complaint were against Berry's new entertainment agent and have been resolved.

Tour and states that "the disagreement is whether either the June 27 or July 5 Proposals accurately reflect the terms of that contract." Relying on the fact that he did not sign the June 27 or July 5, 2012 documents, Berry argues that he is entitled to summary judgment because "Cheyenne cannot show unequivocal acceptance of the [June 27, 2008] contract by Berry, which is an essential element of its [breach of contract] claim." (Doc. No. 144.) Berry further argues that he had no agreement with Cheyenne regarding the November 2008 Tour, as evidenced by testimony from Cheyenne's representative that he did not want to work with Berry again after Berry's behavior related to the July 2008 Tour. Accordingly, Berry argues, any work Cheyenne put in on the November 2008 Tour was voluntary and speculative, and he is entitled to summary judgment on Count III and that part of Count VI based on Berry's actions in connection with the November 2008 Tour. In addition, Berry asserts that there is no evidence that he benefitted from any work by Cheyenne on this tour.

Berry next argues that the economic loss doctrine bars recovery under Counts IV, V, and VI (fraud, negligent misrepresentation, and tortious interference, respectively). Berry also argues that all of Cheyenne's claims for lost profits or damage to reputation should be rejected, because they are too indefinite and speculative.

Cheyenne presented evidence that during the five to six-year period prior to the July 2008 Tour, Cheyenne and Berry conducted an average of three tours per year, with Berry fully performing each tour after Cheyenne sent a final draft of a contract for the tour, drafts which Berry never signed. Cheyenne argues that the fact that Berry failed to

4

sign the June 27 or July 5, 2008 contract is of no consequence in light of Berry's acceptance of the monies paid to Cheyenne, and that it is entitled to recover its damages under both contracts. Cheyenne also counters Berry's other arguments for summary judgment.

## **DISCUSSION**

Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Minn. Deli Provisions, Inc. v. Boar's Head Provisions Co., Inc.*, 606 F.3d 544, 548 (8th Cir. 2010). The parties agree that this diversity case is governed by Missouri law. The task of a federal court sitting in diversity is to attempt to predict how the forum state's highest court would resolve the issues. *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 908 (8th Cir. 2007). When the Supreme Court of Missouri has not addressed an issue, a federal court may not disregard decisions of the Missouri Court of Appeals on that issue unless the federal court is convinced that the highest court of the state would decide otherwise. *Council Tower Ass'n v. Axis Specialty Ins. Co.*, 630 F.3d 725, 728 (8th Cir. 2011).

As Cheyenne argues, under Missouri law, "although a written contract is not signed by one or both of the parties, the acceptance by one of the performance by the other gives validity to the instrument and imposes on the acceptor the obligations provided by the contract." *Hahn v. Forest Hills Const. Co.*, 334 S.W.2d 383, 385-56

(Mo. Ct. App. 1960). Here, by Berry's own admission, the parties had agreements for the July 2008 Tour. The terms of those agreements, whether Berry was in breach thereof, and if so, what Cheyenne's damages were, are matters for the fact finder. Thus, summary judgment on Counts I and II shall be denied. Similarly, factual questions remain about the parties' oral agreement with respect to the November 2008 tour. Thus, summary judgment on Count III shall also be denied.

Reviewing the record in the light most favorable to Cheyenne, the Court concludes that the economic loss doctrine does not bar recovery under Counts IV, V, and VI. In Missouri, this doctrine serves to prohibit a plaintiff in certain types of cases from seeking to recover in tort for economic losses that are contractual in nature. *Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc*., 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). The doctrine "grew out of claims of tort which were alleged against builders of home[s], or instances where a plaintiff sought to hold a manufacturer or distributor of a product liable in tort . . . ." *Id*. at 194. Application of the doctrine here, thus, does not seem appropriate and, indeed, Missouri courts have recognized an exception to the doctrine in cases involving a fiduciary relationship or negligent rendition of professional services. *Id.* (holding that the doctrine did not bar automobile dealership's negligence claims against dealership's floor-plan financing provider and insurance broker/agent that provided insurance to dealership on its inventory, arising from dispute over coverage of dealership's vehicles that were damaged in hail storms, as nature of dealership's action arose from rendering of services to be provided by a contract rather than the state of a

product).  The Court believes that the present case falls into that category of cases in which the economic loss doctrine is not applicable.

The Court expresses no opinion as to Cheyenne's ability to prove the facts as alleged or if the proof recited thus far is sufficient to submit the tort claims to a jury.  The Court only addresses here the economic loss doctrine as a bar to Cheyenne's tort claims and concludes that Berry did not establish its right to summary judgment based on that doctrine.

The Court will address Berry's argument that Cheyenne's claims for damages for lost profits and damage to reputation should be barred because they are too indefinite and speculative, in the context of resolving Berry's motion to exclude the testimony of Cheyenne's damages expert.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that the Court reserves its ruling on Defendant Chuck Berry's motion for summary judgment on Plaintiff's claims for lost profits and damage to reputation, and Defendant's motion for summary judgment is **DENIED** in all other respects.  (Doc. No. 115.)

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 11th day of May, 2012.